**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **GUSTAVO MORALES-ORTIZ** | : | **No. 11-143** |

**MEMORANDUM**

PRATTER, J.                                                                     JANUARY 7, 2021

Defendant Gustavo Morales-Ortiz seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).  The primary basis for his motion is the COVID-19 pandemic and attendant conditions relating to the pandemic as they may affect him.  The Government opposes Mr. Morales-Ortiz's motion.  For the following reasons, the Court denies the motion.

**BACKGROUND**

**I.       Mr. Morales-Ortiz's Criminal Conduct**

In March 2011, Mr. Morales-Ortiz was charged with possession of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) (Count 1); possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count 2); possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count 3); and possession of a firearm by an illegal alien,[1] in violation of 18 U.S.C. § 922(g)(5)(A) (Count 4).  (Doc. No. 10.)

In October 2011, Mr. Morales-Ortiz pled guilty to all four offenses.  (Doc. No. 29.) Mr. Morales-Ortiz faced a mandatory minimum sentence of 120 months for the methamphetamine count, plus a mandatory consecutive sentence of 60 months on the § 924(c) count.  Prior to

---

[1]       There is currently an immigration detainer in place for Mr. Morales-Ortiz, and he is subject to a deportation order because he failed to appear at a 2010 immigration hearing.  (Doc. No. 64 at 15.)

sentencing, Mr. Morales-Ortiz reported that he was in pain from back injuries and subsequent surgery, that he had high cholesterol, and that he was in fair physical condition. (Doc. No. 64 at 2-3.) At his sentencing hearing in May 2012, this Court imposed a sentence of 120 months each on Counts 1, 2, and 4, which included both drug counts and the § 922(g) count, with all sentences to run concurrently, and a consecutive sentence of 60 months on Count 3, the § 924(c) count. (Doc. No. 44.) Mr. Morales-Ortiz filed a notice of appeal, which was later dismissed by the Third Circuit Court of Appeals in March 2013. (Doc. No. 52.) This Court recently denied Mr. Morales-Ortiz's motion for relief under 28 U.S.C. § 2255. (Doc. Nos. 69, 70.)

Mr. Morales-Ortiz is currently serving his sentence at FCI Oakdale II, with an estimated release date of August 2023. He has served approximately 122 months and has credit for good conduct time of 17 months, for a total credit of 139 months. Since 2017, he has been sanctioned twice by the Bureau of Prisons for possessing unauthorized items. (Doc. No. 64 at 3.)

## II.    Mr. Morales-Ortiz's Request for Compassionate Release

The Government does not contend that Mr. Morales-Ortiz has failed to exhaust his request for administrative relief by first requesting compassionate release from his facility's warden. Therefore, the Court is satisfied that Mr. Morales-Ortiz has complied with this requirement. Indeed, Mr. Morales-Ortiz asserts that he "disagrees with the BOP's denial of his compassionate release request." (Doc. No. 60 at 2.)

In September 2020, Mr. Morales-Ortiz filed his motion for compassionate release, asserting that "he is 61 years old and is ailing from: high blood pressure; cholesterol; back injury (which was operated on); blood circulation; arthritis; poor eye sight; and sleep disorder." (Doc. No. 60 at 1.)

Mr. Morales-Ortiz's BOP medical records, which the Government filed with its response (Doc. No. 65 at 57), show that Mr. Morales-Ortiz has sought treatment for the conditions that he listed in his motion and that he is currently receiving appropriate treatment and care for these conditions, including any necessary medications. Thus, at this time, all of his conditions appear to be appropriately controlled with the medication being provided by the prison. Mr. Morales-Ortiz is fully ambulatory and able to engage in all normal activities of daily living. Mr. Morales-Ortiz does not state otherwise in his motion or argue that he is not receiving proper treatment at his facility.

### III.    BOP's Response to the COVID-19 Pandemic

BOP's "highest priority [is] to continue to do everything [it] can to mitigate the spread of COVID-19 in [its] facilities,"[2] and it has taken significant measures to protect the health of the inmates in its charge. Indeed, BOP has had a Pandemic Influenza Plan in place since 2012.[3] The protocol established a phased framework which requires BOP facilities to begin preparations in the face of a suspected outbreak overseas and further addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates. BOP began planning for potential COVID-19 transmissions as early as January 2020, during the same time in which it established a working group to develop COVID-19 policies. In accordance with the Coronavirus (COVID-19) Action Plan, BOP began to modify its operations to minimize the risk of COVID-19 transmissions nine months ago, in March of this year.

---

[2]    BOP, *BOP Modified Operations* (last updated Nov. 25, 2020), available at https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Jan. 6, 2021).

[3]    BOP Health Services Division, *Pandemic Influenza Plan-Module 1: Surveillance and Infection Control* (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf (last visited Jan. 6, 2021).

Presently, BOP operations are governed by Phase Nine of the Action Plan. The current modified operations plan permits only limited group gathering, with attention to social distancing efforts to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. BOP has limited the movement of inmates and detainees among its facilities. Moreover, official staff travel has been suspended, as has most in-person staff training. BOP is endeavoring to regularly issue face masks to all staff and inmates, and strongly encourages masks to be worn in public areas where social distancing cannot be achieved. Social visits remain suspended or severely limited.

Inmates who travel outside of a BOP institution, such as for court appearances, are to be quarantined upon their return. Newly admitted inmates are screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates are placed in quarantine for at least 14 days or until cleared by medical staff. Symptomatic inmates are placed in medical isolation until they test negative for COVID-19 or are cleared by medical staff as meeting the CDC criteria for release from isolation. The Program Review Division will conduct unannounced site visits to ensure compliance with the Health Services Division and the CDC's guidance.

As directed by the Attorney General, BOP is also prioritizing the use of statutory authority to place eligible prisoners in home confinement.[4] Pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act, BOP may also "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" in the event the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136 § 12003(b)(2). In April 2020, the Attorney General gave the Director of BOP the

---

[4]     This authority includes the ability to place an inmate in home confinement during the last six months or the remaining 10% of a sentence, whichever is shorter, 18 U.S.C. § 3624(c)(2), and to move elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g) to home confinement.

authority to exercise this discretion, beginning at the facilities that have seen the greatest incidence of COVID-19 transmission thus far. Changes to the protocols occur in response to developments as warranted.

Taken together, these measures are designed to mitigate the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices accordingly to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

BOP's efforts at combating the effects of the pandemic have extended to FCI Oakdale II. FCI Oakdale II currently houses 828 inmates. As of January 6, 2021,[5] there are 12 COVID-positive staff members and one COVID-positive inmate. Since the start of 2020, 82 inmates and 6 staff members have recovered from COVID-19. One inmate at FCI Oakdale II has died from COVID-related conditions.

## LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007). However, a defendant can move to reduce his or her term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). In order to do so, the defendant must first request that the BOP file a motion on his or her behalf,[6] which can only occur after he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

---

[5]     The data is current as of January 6, 2021, according to the BOP website, available at https://www.bop.gov/coronavirus.

[6]     "The recently enacted First Step Act allows 'incarcerated defendants to seek compassionate release from a court on their own motion, not just through the Bureau of Prisons.'" *United States v. Perri*, No. 15-cr-486, 2020 WL 6324384, at *2 (E.D. Pa. Oct. 28, 2020) (quoting *United States v. Mark*, No. 10-cr-742-1, 2020 WL 5801495, *1 (E.D. Pa. Sept. 29, 2020)).

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

In the event the moving defendant complies with the exhaustion requirement,[7] a court may reduce his or her term of imprisonment if it finds that extraordinary and compelling reasons warrant such a reduction, that the reduction is consistent with the Sentencing Commission's applicable policy statements,[8] and that the § 3553(a) factors favor reduction. Pursuant to the Sentencing Commission's relevant policy statement, a court must also find that the defendant is not a danger to the safety of any person or the community as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2).

Although Congress has not defined the term "extraordinary and compelling," the Sentencing Commission has issued an application note to its relevant policy statement which provides guidance for defining the conjunctive term. Application Note 1 provides, in pertinent part, that a defendant's non-terminal illness may constitute an extraordinary and compelling justification where "the defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.

---

[7]    As noted above, the Government does not contest that Mr. Morales-Ortiz has met the exhaustion requirement.

[8]    Despite § 3582(c)(1)(A) mandating that a reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission," "the policy statement is now clearly outdated" in light of the Sentencing Commission's failure to update its policy statement to account for the changes imposed in light of the amendment to § 3582(c)(1)(A) by the First Step Act of 2018. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. Apr. 1, 2020). Therefore, although the policy statement undoubtedly provides helpful guidance, it "does not limit the Court's independent assessment of whether 'extraordinary and compelling reasons' exist under § 3582(c)(1)(A)(i)." *Id.* at 398.

A court considers multiple factors under 18 U.S.C. § 3553(a), including, among other things, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The defendant bears the burden of showing that a reduction in sentence is proper. *United States v. Rengifo*, No. 13-131, 2020 WL 4206146, at *2 (M.D. Pa. July 22, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)); *see also United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

## DISCUSSION

The Court certainly does not minimize the critical health risk posed by COVID-19. However, as very concerning as the current pandemic is, resolving Mr. Morales-Ortiz's motion still requires the Court to take into serious consideration the limits imposed by 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Morales-Ortiz argues that he should be released given his current medical conditions. Although COVID-19 is a dangerous, and sometimes lethal, virus for all individuals, the Centers for Disease Control and Prevention (CDC) has deemed certain people with specific underlying medical conditions and the elderly to be at a heightened risk of severe illness or death.[9] "While this court is not bound by the CDC's guidelines, it follows suit with many other district courts who have turned to the guidance as reliably informative." *United States v. Perri*, No. 15-cr-486, 2020 WL 6324384, at *2 (E.D. Pa. Oct. 28, 2020) (listing cases).

---

[9]     *See People at Increased Risk*, Centers for Disease Control and Prevention (Jan. 4, 2021), available at   https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html   (last   visited   Jan. 6, 2021).

But for COVID-19, Mr. Morales-Ortiz would likely present no basis at all for compassionate release. However, given the COVID-19 pandemic, Mr. Morales-Ortiz contends that his high blood pressure, cholesterol, back injury, blood circulation, and other conditions represent risk factors in light of COVID-19.[10]  (Doc. No. 60 at 1.)  However, these purported medical issues do not necessarily, actually or theoretically, warrant the emergency relief Mr. Morales-Ortiz requests.

The Government acknowledges that an inmate who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19 presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." *See* U.S.S.G. § 1B1.13 n.1.  The CDC has recently revised its list of people with certain medical conditions who "are at increased risk of severe illness" from COVID-19.[11]  The CDC also lists several conditions where there "might be an increased risk for severe illness," but insufficient data exists to say more.

Mr. Morales-Ortiz has not identified a condition that he currently has that the CDC considers high-risk. However, Mr. Morales-Ortiz does point to one condition, namely his high blood pressure, which presents a possible risk factor as to COVID-19.  That said, hypertension or high blood pressure have only been identified by the CDC as conditions which *might* cause an increased risk for severe illness due to COVID-19.[12]  This condition, along with Mr. Morales-

---

[10]     Mr. Morales-Ortiz also argues that his age, 61 years old, is a risk factor. (Doc. 60 at 2.) However, while the Court acknowledges that the CDC has stated that the risk for severe illness with COVID-19 increases with age, "[t]he greatest risk . . . is among those aged 85 or older." *See Older Adults*, Centers for Disease Control and Prevention (Dec. 13, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Jan. 6, 2021).

[11]     *People with Certain Medical Conditions*, Centers for Disease Control and Prevention (Dec. 29, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 6, 2021).

[12]     *Id.*

Ortiz's other stated medical issues, seems to be well-controlled with medication, and he does not cite any impediment to his ability to receive appropriate care at the prison. *See United States v. Ackerman*, No. 11-cr-740-KSM-1, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020).

Although not mentioned in Mr. Morales-Ortiz's motion, the Government points out that his current body mass index (BMI)), based on his most recent height and weight, is 30.4, which just barely meets the CDC threshold for obesity. (Doc. No. 64 at 13.) According to the CDC, obesity, or having a BMI of 30 or higher, is a condition which presents an increased risk of severe illness from COVID-19.[13] And as detailed in the above guidelines policy statement, a qualifying medical condition is only one in which the inmate is "not expected to recover." Here, it would seem that Mr. Morales-Ortiz could move out of this risk category. In general, courts have been reluctant to grant compassionate release based solely on obesity. *See United States v. Williams*, No. 15-cr-471-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020) ("[O]besity during the age of the COVID-19 pandemic does not necessarily mean, on its own, that extraordinary and compelling reasons justify the reduction of his sentence."); *United States v. Grasha*, No. 18-cr-325, 2020 WL 5747829, at *5 (W.D. Pa. Sept. 24, 2020) (finding defendant's obesity and BMI of 48, while presenting a serious risk, did "not arise to an extraordinary and compelling reason for release"). Therefore, Mr. Morales-Ortiz's stated medical conditions and his obesity do not present extraordinary and compelling reasons for his compassionate release.

As to the current situation at FCI Oakdale II, the Court in no way minimizes the threat that COVID-19 poses. Currently, as mentioned above, as of January 6, 2021, FCI Oakdale II reports 1 inmate and 12 staff members are COVID-positive, while 82 inmates and 6 staff members have

---

[13]     *Id.*

recovered.[14]  While the pandemic remains a fluid and serious situation, FCI Oakdale II engages in strenuous efforts to protect its inmates and staff members against COVID-19.  Additionally, the BOP website continues to provide transparent information with the community about positive cases and recoveries.

Even if Mr. Morales-Ortiz had presented an extraordinary and compelling reason that warranted his compassionate release, the Court's consideration of the § 3553(a) factors necessitate a denial of Mr. Morales-Ortiz's motion.  Accounting for good conduct time, Mr. Morales-Ortiz has served approximately 139 months, or just over three quarters, of his 180-month sentence.  He has not shown how releasing him before he serves the full term of his sentence would align with the statutory sentencing factors, notably the seriousness of his offense, the need to promote respect for the law, the need to provide just punishment for the offense, and the need to deter others from similar criminality.  *See* 18 U.S.C. § 3553(a).  At the time of his arrest, Mr. Morales-Ortiz possessed a significant amount of methamphetamine, cocaine, a digital scale, two firearms, and over 90 rounds of ammunition.  (Doc. No. 64 at 16.)  To be sure, this dangerous conduct took place almost ten years ago, but Mr. Morales-Ortiz was a mature adult at the time and was experiencing some of the same conditions he presents today, albeit with a slightly lower BMI—28.9 at the time of his sentencing.  (Doc. No. 64 at 16.)  Thus, Mr. Morales-Ortiz continues to present a danger to the community.  Due to the serious nature of his crimes, an early release would not provide just punishment or serve as a deterrent to others.  *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (noting district court reasonably concluded early release not warranted where defendant's "crimes were extraordinarily serious" and required "a significant period of incarceration"); *United States v. Young*, No. 06-cr-710-02, 2020 WL 4925592, at *1 (E.D. Pa.

---

[14]     The data is current as of January 6, 2021, according to the BOP website, available at https://www.bop.gov/coronavirus.

Aug. 21, 2020) (denying compassionate release for defendant who served over two thirds of his 280-month sentence for armed robbery because his early release would undermine the goals of sentencing).[15]

**CONCLUSION**

For the foregoing reasons, the Court denies Mr. Morales-Ortiz's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).  An appropriate order follows.

**BY THE COURT:**

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

---

[15]     Lastly, Mr. Morales-Ortiz currently has an immigration detainer in place and he is subject to a deportation order for failure to appear at a 2010 immigration hearing.  (Doc. No. 64 at 15.)  *See United States v. Jianguo Han*, No. 2:15-CR-69 JCM (NJK), 2020 WL 3620069, at *3 (D. Nev. July 2, 2020).